THE STATE, EX REL. THE CITY OF BEATRICE, V. THOMAS H. BENTON, AUDITOR OF PUBLIC ACCOUNTS.

Corporations—Municipal: PAVING BONDS. The ninth proviso to the act entitled " An act to amend sections 27 and 58, and to add subdivisions LVIII. and LIX. to section 52 of article 2 of chapter 14 of the Compiled Statutes, relating to cities of the second class having over five thousand (5,000) inhabitants, and to repeal said original sections 27 and 58, and all acts and parts of acts in conflict with this act," approved March 30, 1887, *Held*, Not to apply to, limit, or qualify the provisions of section 2 of said act, which authorizes and empowers the mayor and council to issue " district paving bonds " for the purpose of paying the cost of paving, macadamizing, or repaving the streets and alleys in any paving district, exclusive of the intersections of streets and space opposite alleys therein.

ORIGINAL application for mandamus to compel respondent to register certain bonds issued by relator.

*L. M. Pemberton*, for relator.

*William Leese, Attorney General*, for respondent.

COBB, J.

Chapter 14 of the Session Laws of 1887 is entitled "An act to amend sections 27 and 58, and to add subdivisions LVIII. and LIX. to section 52 of article 2 of chapter 14 of the Compiled Statutes, relating to ' cities of the second class' having over 5,000 inhabitants, and to repeal said original sections 27 and 58, and all acts and parts of acts in conflict with the same."

The amended section 27 provides for the duties of the city engineer and that of a special engineer, and the respective duties of the mayor and engineer in making estimates and letting contracts for city improvements.

Subdivision LVIII. confers upon the city council power to open, extend, widen, narrow, grade, curve, gutter, and pave, or otherwise improve, and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, etc. Then follow sundry provisions and provisos respecting temporary grades, laying down sidewalks, etc., and then a provision that the mayor and council shall have power to pave, repave, or macadam any street, or alley, or any part thereof, in any city, and for that purpose to create suitable paving districts, which shall be consecutively numbered, etc., such work to be done under contract, and under the supervision of the board of public works of the city; whenever the owners of lots or lands abutting upon the streets or alleys within any paving district representing a majority of feet front thereon shall petition the council to pave, repave, or macadam such streets or alleys, it shall be the duty of the mayor and council to pave, repave, or macadam the same, and to use such material therefor as the majority of owners shall determine upon; *Provided,* The council shall be notified in writing by said owners of such determination, within thirty days next after the passage and approval of the ordinance ordering such paving, repaving, or macadamizing. In case such owners fail to designate the material they desire used in such paving, repaving, or macadamizing, in the manner and within the time above provided, the mayor and council shall determine upon the material to be used.

"The cost of paving, macadamizing, or repaving the streets and alleys within any paving districts, except the intersections of streets and space opposite alleys within such districts, shall be assessed upon the lots and lands abutting upon the streets and alleys in such district in proportion to the feet front so abutting upon such streets and alleys.

"The assessment of the special taxes for paving purposes herein provided for shall be made as follows: The total cost of the improvement shall be levied at one time upon the property and become delinquent as herein provided. One-tenth of the total amount shall become delinquent fifty days after such levy, one-tenth in one year, one-tenth in two years, one-tenth in three years, one-tenth in four years, one-tenth in five years, one-tenth in six years, one-tenth in seven years, one-tenth in eight years, one-tenth in nine years; each of said installments except the first shall draw interest at the rate of seven per cent per annum from the time of levy aforesaid until the same shall become delinquent, and after the same shall become delinquent a penalty of five per cent, together with interest at the rate of one per cent per month, shall be paid thereon, as in the case of other special taxes. Such taxes shall be collected and enforced as in other cases of special taxes."

The paragraphs following provide as to the duties of the city treasurer relating to the collection of taxes by the seizure and sale of certain property in satisfaction thereof.

We quote again from the act, p. 314 (1887): "The cost of paving, macadamizing, or repaving the intersections of streets and space opposite alleys in any paving district shall be paid by the city as hereinafter provided, but nothing herein contained shall be construed to exempt any street or other railway company from paving or repaving its whole right of way, including all space between and one foot beyond their outer rails, at its own cost, whenever any street shall be ordered paved or repaved by the mayor and council of the city as provided by law.

"For the purpose of paying the cost of paving, macadamizing, or repaving the streets and alleys in any paving district, exclusive of the intersections of streets and space opposite alleys therein, the mayor and council shall have power and may by ordinance cause to be issued

State v. Benton.

bonds of the city to be called 'District Paving Bonds of District No. ...,' payable in not exceeding ten years from date, and to bear interest payable annually not exceeding the rate of seven per cent per annum, with interest coupons attached, and in such case shall also provide that said special taxes and assessments shall constitute a sinking fund for the payment of said bonds and interest."

*Provided* also, that the owner of such abutting lots shall have the privilege of paying the whole of such assessment within fifty days and releasing the same from the levy of such special taxes; and further, that said bonds shall not be sold for less than their par value, and empowering the mayor and council to make other and further assessments if the first, or any part thereof, shall fail, or for any reason become invalid.

The succeeding paragraph of the act, p. 315, provides that, "Whenever the mayor and council deem it expedient they shall have power for the purpose of paying the costs of paving, repaving, or macadamizing the intersections of streets and space opposite alleys in the city, to issue bonds of the city, to run not more than twenty years, and to bear interest payable semi-annually at the rate not exceeding six per cent per annum, with coupons attached to be called 'Paving Bonds,' and which shall not be sold for less than par, and the proceeds of which shall be used for no other purpose than paying for the cost of paving, repaving, or macadamizing the intersections of streets and alleys in the city.

"*Provided*, That the aggregate amount of such bonds issued in any one year shall not exceed the sum of $50,-000; and *Provided further*, That no such bonds shall be issued until the question of issuing the same has been submitted to the electors of the city at a general or special election therein, and authorized by a vote of the majority of the electors voting at such election."

The question here presented is, whether the limitation

of power upon the mayor and council to issue bonds only after the proposition to issue the same has been submitted to the electors of the city, and authorized by a majority of the voters at such election, is restricted to the paving bonds, in said amendment, or whether it extends to and includes the district paving bonds therein provided for? It will be observed that nearly the whole of the present act consists of the amendment of one section of the previous act. It seems to have been the theory upon which it was drafted, and it is probably true that, under the peculiar provisions of our constitution relating to the amendment of statutes, these provisions should constitute but one section of the act. At all events, we are here presented with the somewhat singular instance of a single section running through 20 pages of the statute book, and burdened with 18 distinct *provisos*. We are therefore without the usual distribution of the law into sections, which affords important aid in the construction of a statute. None of these *provisos* are numbered in the statute, but we will call the one now under consideration the IX., and that immediately preceding it the VIII.

The first provision of this act to which I call special attention, is that which provides that the cost of paving, etc., within any paving district, except the intersections of streets and spaces opposite alleys, shall be assessed upon lots and lands abutting upon streets and alleys in such district in proportion to the feet front so abutting upon streets and alleys, and the provision for the assessment of special taxes for the payment thereof upon such abutting property, payable one-tenth within 50 days after the assessment thereof, and one-tenth *annually* until the same shall be fully paid. And next it is provided that the costs of paving the intersections of streets and the spaces opposite alleys should be paid by the city. The law-makers having made the above distinction between these two classes of public improvements, now take up the question of pro-

viding means for paying the same. Having provided that the expense of the first class shall eventually fall upon the property holders, but providing that a part of it shall be upon a long term of credit, and as the workmen and material men who make these improvements must be paid down, means must be placed in the hands of the authorities of the city for raising immediate funds for such purpose, so they very naturally go back and enter on the duty of pointing out the method by which the city authorities shall raise the money to pay the cost of paving the streets and alleys, which cost is to be re-imbursed to the city by means of the special assessments upon the abutting property. For this they enact that, "the mayor and council shall have power, and may by ordinance cause to be issued bonds of the city to be called district paving bonds." They also provide that these bonds shall run not exceeding ten years from date, and bear interest not exceeding seven per cent per annum, being guarded, both in respect to the time said bonds may run, and the rate of interest they may bear, by the time given in the preceding provisions for the completion of the payment of such special assessments and the rate of interest such assessments bear. They also provide in express terms that the bonds themselves shall provide that the special taxes and assessments shall constitute a sinking fund for the payment of said bonds and interest.

Then we come to the provision for the issuing of paving bonds for the purpose of providing that these bonds may run not to exceed twenty years, to bear interest payable *semi-annually* at a rate not exceeding six per cent, to be called *paving bonds*, which shall not be sold for less than par value. It may be well to note the several points of difference between these two classes of bonds. The district paving bonds may be issued to run not to exceed ten years, to bear interest, payable annually, not to exceed seven per cent. It may be said as to these bonds that

while they are issued by the authority of the city, and that the city is primarily responsible for their payment, both principal and interest, out of special assessments upon abutting property, the voters of the city had no real interest in them. But the paving bonds, which may run not to exceed twenty years, shall draw not to exceed six per cent interest, payable semi-annually, and shall not be sold for less than par. These bonds being thus placed upon an equality of value with bonds issued for works of internal improvement, funding bonds, etc. The next *proviso*, following these provisions, is to the effect that the aggregate amount of *such bonds* to be issued in any one year shall not exceed the sum of $50,000.

If we can ascertain the exact meaning intended by the use of the words "such bonds," in this *proviso*, it will aid materially in the solution of the proposition now before us. Did the legislature mean by the use of these words to include district paving bonds, as well as paving bonds, and to limit the amount of all bonds to be issued, in any one year, to the sum of $50,000? I think not. For, if so, would not the legislature have provided what proportion of the aggregate amount should be district paving bonds, and what proportion paving bonds? I think the legislature necessarily would have so distinguished in the law, considering the fact that the proportion of the former to the latter, in a given district, or section of the city, must be nearly as *three* to *one*. And again, other provisions of the act quoted are to the effect that the special assessments which are to pay for the paving generally, and provide a sinking fund for the payment of the paving bonds, begin to fall due at the expiration of 50 days from the date of the ordinance providing for the improvement and levying the same, and continue to fall due by annual tenths.

Could it have been the intention to impose this burden upon the abutting property, providing for its drawing a

high rate of interest, and then limit the authority of the city to raise the means for the completion of the work to a sum probably not exceeding three-fourths of $50,000 per year, an insignificant sum compared to that which must be expended annually in order to complete such improvements even in our smaller cities of the second class, within any reasonably near future? But I think the words "such bonds," here used, mean only such *paving* bonds, and were not intended to include, and thus to limit the amount of the *district* paving bonds within the operation of the proviso; but that it was the plain intention of the legislature, evidenced by the terms of these provisions, to make it the duty of the mayor and council to issue district paving bonds to an amount equal to the special assessments on abutting property in each paving district, immediately on ascertaining the cost of paving the streets in such district exclusive of the intersections of streets and the spaces opposite alleys therein. And the city having an ample guaranty of indemnity against final responsibility on such bonds could have no interest in limiting the amount of their issue to a sum less than the cost of the improvement.

Having, for these considerations, and others, which the limited time at my disposal will not permit enlarging upon, reached the conclusion that the words "such bonds," as used in the proviso, which I will designate as the VIII., are limited in their meaning and application to the paving bonds proper, and do not apply to, nor limit the amount of, the district paving bonds which may be issued in any one year, it therefore necessarily follows that the same words when used in the IX., or succeeding proviso, are subject to the same limitation in their application, and cannot be construed to take away or limit the power delegated to the mayor and council in the preceding provisions of the act to issue district paving bonds to cases where the question of issuing them shall have been submitted to the electors of the city, and been voted for by a majority of the voters at such election.

I am, therefore, of the opinion that the mandamus prayed for requiring the auditor of public accounts to register the district paving bonds of the relator ought to be issued.

WRIT ALLOWED.

THE other judges concur.